UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

In Re:

    Jeffery A. Gelhaar, and                           Case No. 15-20540-GMH
        Janel L. Gelhaar,

            Debtors.                                     Chapter 13
_____

**DECISION AND ORDER**
_____

      The Gelhaars are chapter 13 debtors. They own stock in Dehumidifier Corporation of America, Inc., a closely held corporation. The Gelhaars propose a debt-adjustment plan that promises to repay unsecured creditors in two ways: (1) the Gelhaars will pay their disposable income into the plan during the three-year plan term, and (2) they will sell the stock and pay the non-exempt net proceeds into the plan. CM-ECF Doc. No. 50, at 3.

      John Alferi, an unsecured creditor, hired accountants Baker Tilly to opine on the value of the stock, which presumably is subject to sale restrictions. Baker Tilly concluded that the stock is worth $96,500. See CM-ECF Doc. No. 33, at 2 and 6. The parties have neither submitted Baker Tilly's report nor disclosed its methodology. But the Gelhaars do not dispute the valuation.

      Alferi objected to confirmation of the Gelhaars' plan, and the chapter 13 trustee joined him. They principally contend that the plan offends 11 U.S.C. §1325(a)(4)'s best-interests-of-creditors test. They argue that the court may not confirm the plan unless (1) the court decides the stock's value on the plan's effective date, and (2) the plan commits the debtors to pay that amount into the plan, regardless of the stock's eventual

sale price. See CM-ECF Doc. No. 67. They also argue that the plan is not feasible, and the debtors will not be able to make all plan payments, as required by 11 U.S.C. §1325(a)(6). *Id*. Because the trustee and Alferi are in unison, this decision will simplify matters by treating the trustee as the sole objecting party.

I

Section 1325(a)(4) requires debt-adjustment plans to leave unsecured creditors no worse off than they would have been had the debtor filed a chapter 7 liquidation. To meet this requirement, the plan must provide unsecured creditors with at least the same value of property as those creditors would have received had a hypothetical chapter 7 trustee liquidated the debtor's assets on the plan's effective date:

> (a) . . . the court shall confirm a plan if—
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. §1325(a)(4).

In arguing that the Gelhaars' plan does not meet §1325(a)(4)'s best-interests test, the trustee focuses solely on the debtors' stock ownership—again, arguing that the plan must state the stock's value and command the Gelhaars to pay that value into the plan. (Because the trustee ignores the debtors' other property when making her §1325(a)(4) argument, this decision does too.) The Gelhaars, in contrast, argue that the plan necessarily complies with §1325(a)(4) because it requires the Gelhaars to sell the stock and pay unsecured creditors all of the non-exempt net proceeds, whatever those might someday be. See CM-ECF Doc. No. 62 and 72.

Neither argument is correct. Whether the Gelhaars' plan meets the best-interests test is ultimately a fact question that is unanswerable in the abstract manner in which the parties present the issue. Again, §1325(a)(4) requires the Gelhaars to prove that the

amount distributed to each unsecured creditor under the plan is not less than the amount those creditors would have received in a hypothetical liquidation. To conduct that inquiry in earnest, the court would have to compare the value of the net stock proceeds the Gelhaars will receive from selling the stock, discounted to the plan's effective date, against the value of the net stock proceeds sold by a hypothetical chapter 7 trustee, discounted to the same date. This comparison would minimally require evidence relating to: (1) how much the Gelhaars can expect to receive for the stock during the three-year plan term, (2) the Gelhaars' costs of sale, (3) how long it will take the Gelhaars to sell the stock, (4) the risk that the Gelhaars will be unable to sell the stock in the next three years, (5) how much a chapter 7 trustee would receive for the stock, (6) the chapter 7 trustee's costs of sale, (7) the amount of time it would take the chapter 7 trustee to sell the stock and distribute the proceeds, and (8) the risk that the chapter 7 trustee would be unable to sell the stock. The court would also have to account for differences in the cost of administration—as the Gelhaars emphasize, the chapter 13 trustee's compensation for distributing the sale proceeds is expected to be less than a chapter 7 trustee's compensation. See 11 U.S.C. §326(a) & 28 U.S.C. §586(e)(1). And the court might need to consider whether unsecured creditors would be entitled to receive post-petition interest in a hypothetical chapter 7 liquidation. See 11 U.S.C. §726(a)(5).

The current record provides almost no insight into these questions. The Gelhaars' schedules report only that they own a "25% shareholder interest in Dehumidifier Corporation of America, Inc.", which they value at $96,500 "based on [a] valuation report by Baker Tilly based on [the] debtor[s'] ownership of 500 shares with [a] stated value of $193/share". CM-ECF Doc. No. 33, at 2. Baker Tilly's assumptions are unknown. Indeed, the record contains no information about restrictions on the sale of the stock. As a result, the court cannot determine based on the existing record whether the Gelhaars and a hypothetical chapter 7 trustee are similarly situated in their ability to sell the stock, the

amount that either of them could expect from a sale, and the amount of time it would take either of them to accomplish a sale.

Precision in deciding whether the plan makes unsecured creditors worse off would require sorting out many, if not all, of these issues, likely at substantial litigation cost. But precision is probably unnecessary. As the Gelhaars emphasize, the chapter 7 trustee's commission would likely exceed the administrative cost of distributing the stock-sale proceeds through the chapter 13 plan, at least if Baker Tilly's valuation is in the right ballpark. The trustee does not appear to contest this. As a result, the Gelhaars' commitment to sell the stock and distribute the non-exempt net proceeds to unsecured creditors provides some basis for concluding that their plan meets §1325(a)(4)'s best-interests test.

Perhaps a chapter 7 trustee could sell the stock faster or for more money, but the current record contains nothing from which the court might so conclude. All parties presented the §1325(a)(4) issue as a matter of law, which it isn't. I will afford the trustee and Alferi an opportunity to prove that unsecured creditors would fare better in a chapter 7 case, but, if they desire to present such proof, they must file a written request for an evidentiary hearing within fourteen days from the entry of this order.

II

The trustee's §1325(a)(6) argument fails. The trustee's implicit premise is that the plan must commit the Gelhaars to contribute a predetermined stock-sale value. The trustee contends that the Gelhaars have not complied with §1325(a)(6)'s requirement that they show an ability to make all required plan payments because the Gelhaars have not shown an ability to pay a predetermined stock-sale value into their plan in the event that their contemplated stock sale does not generate a predetermined stock-sale amount.

Like §1325(a)(4), however, §1325(a)(6) doesn't require a valuation of all property to be distributed through the plan. It simply requires debtors to show that they will be able to make all required payments. If the Gelhaars can satisfy §1325(a)(4)'s best-interests

requirement by committing to sell the stock through a less costly chapter 13 process, then they can satisfy §1325(a)(6)'s ability-to-make-plan-payments requirement by establishing their ability to sell the stock during the plan term.

The trustee has not contested the Gelhaars' ability to sell the stock during the plan's three-year term. Presumably, then, the Gelhaars will be able to pay the non-exempt net sale proceeds as required by the plan, which, in this context, satisfies §1325(a)(6).

III

In sum, §1325(a)(4) does not, as a matter of law, require the Gelhaars to specify the amount the plan will distribute to unsecured creditors as a result of the contemplated stock sale. Nor does the plan's commitment to distributing net sale proceeds through the plan necessarily eliminate any potential §1325(a)(4) obstacle. But the plan's commitment to distribute stock-sale proceeds does provide a basis for finding that the Gelhaars' plan complies with §1325(a)(4), because of the likely administrative cost differences in distributing sale proceeds in chapter 7 and chapter 13. And, in the absence of a showing that the Gelhaars will not be able to sell the stock during the plan term, §1325(a)(6) does not bar confirmation.

* * * *

As stated above, the trustee and Alferi may request an evidentiary hearing on their objections to confirmation. Any such request must: (A) describe the evidence the party will present in support of any contention that the Gelhaars' plan fails to satisfy §§1325(a)(4) or (6), and (B) be filed within fourteen days of entry of this order. If neither the trustee nor Alferi timely requests an evidentiary hearing, the court will overrule the objections without a further hearing.

If either the trustee or Alferi timely requests an evidentiary hearing, the court will hold a preliminary hearing on confirmation on **July 19, 2016, at 2:30 p.m.** The parties may appear in person in Room 133 of the federal courthouse or by telephone. To appear by telephone, a party must call the conference line at 1-888-684-8852 and enter access code

7183566 before the scheduled hearing time. At the preliminary hearing, the court will expect the parties to address any needed discovery and to be prepared to schedule an evidentiary hearing.

June 17, 2016

_____
G. Michael Halfenger
United States Bankruptcy Judge